Horowitz, J.
Tommy is a youngster thirteen years of age, the whereabouts of whose natural parents has been unknown since his infancy.
With their consent and through a welfare agency, at the age of four and one-half months, the County Court of Knoxville in the State of Tennessee granted legal adoption of Tommy to a married couple hereinafter referred to as the Vines. The adoptive parents were married in Nevada in a civil ceremony in December, 1940. Tommy, who was born in 1942, was adopted by them as aforesaid in January, 1944.
The matrimonial bliss of the Vines was ended by a decree of the Supreme Court of the State of New York, Ulster County, in June, 1946, when the adoptive father obtained a judgment of absolute divorce against the adoptive mother dissolving the marriage heretofore existing between them, and forbidding the mother to marry any person other than the adoptive father during the lifetime of the adoptive father except by express permission of the court. The adoptive father remarried another woman.
Tommy, after the divorce decree, lived for a time with his adoptive mother and then for a spell with his adoptive father until strained relationship developed between the hoy and his adoptive father’s new spouse. The adoptive father then sent Tommy to his adoptive mother where he continued to live until on or about October 26, 1954.
*380 Tommy was very unhappy in his adoptive mother’s home dué to her addiction to drink and association with immoral characters, male and female. It became a common practice for the adoptive mother, whenever on one of her sprees or escapades, to leave Tommy stranded and on his own resources. The only ray of kindness visited upon him was the interest of neighbors who sheltered him from time to time when he was thus left alone.
In October, 1954, the Society for the Prevention of Cruelty to Children, by sworn petition, instituted a proceeding in this court against both the adoptive mother and father of Tommy and on October 26, 1954, this court ordered and adjudged Tommy to be a neglected child.
In the course of the neglect proceeding the facts indicated that during the summer of 1954, Tommy was with his adoptive mother at Fire Island where petitioners who are legally married and living together as husband and wife accorded him kindness and the hospitality of their home whenever his adoptive mother left him alone. He wandered over to petitioners for comfort and assistance on innumerable occasions.
It has often been said that it is an ill wind that blows no good. For Tommy the dawn of a new life began when one of the recent hurricanes in all its velocity struck Fire Island. Tommy was left to its peril due to his adoptive mother’s disappearance overnight on a mission of satisfying her thirst for alcoholic beverages. The boy sought refuge at the home of petitioners who welcomed him and sheltered him under their protective wing. The ill wind of the hurricane with ravaging force had torn Tommy from the insecure moorings of improper guardianship and control of his adoptive mother. He was transplanted into a new home atmosphere that was destined to be his very own in the not too distant future.
It was in appreciation of the warmth and many kindnesses petitioners had extended to Tommy that he requested the court at the time of the adjudication of neglect against his adoptive mother to permit him to stay with petitioners. The court granted his wish and paroled him in their custody. He has been with them ever since.
Petitioners have no children and occupy an apartment of five large rooms in a good residential section of the borough of Manhattan. Tommy has his own room there. Petitioner husband is self-employed in the insurance, real estate business and both petitioners are highly respected, fairly substantial and very personable individuals.
*381 In December, 1955, petitioners instituted a proceeding in this court for an order allowing and approving their adoption of Tommy and that he be known and called by their name.
A copy of the petition for adoption with notice of hearing was duly served by the attorneys for petitioners on the attorney of record of the adoptive father and the attorney of record of the adoptive mother. The adoptive mother failed to appear in person or by attorney on the return date. The court thereupon adjourned the matter and issued a subpoena for the adoptive mother to appear on the adjourned date. She ignored the subpoena of the court and failed to attend. The court thereupon proceeded with the hearing and testimony was given by petitioners, the adoptive father, the boy, and the probation officer.
The testimony established that petitioners were married to each other in September, 1939, and neither has any previous marriage; that they both enjoy good health; that petitioner wife attends to the household duties while petitioner husband, who attended college and law school, is engaged in the real estate business. Both petitioners have wholesome habits. They enjoy bridge, swimming and tennis and have a summer home on Fire Island. Both indicate great love for Tommy and express the desire to adopt and furnish him with the security he needs. During the period that he had resided with them they have clearly shown their love for him and their interest in his welfare and growth. His health has improved from an undernourished child to a physically sound boy. They took him out of public school and enrolled him in a private school where he has improved and is getting special attention and a good education.
Tommy appeared before the court and gave the impression of a well-rounded youth, physically, mentally and spiritually; of excellent manners, demeanor and poise. He is thirteen years of age now. When the court inquired of him if he understood what the proceedings were all about and if he would like to give his reaction to the same he responded as follows:
“ Tommy: To me, Your Honor, this means that it will give me a foundation for my future life. Mr. and Mrs.-are very good people and at this point I know them very well. They have tried to please me in every way and I have tried to do the same. To me this makes a real foundation. I believe that when I become an adult I can say that I am the son of Mr. and Mrs. -and that will bring some spark to people.
“ Court: Well, do you feel now that Mr.-has acted as a father toward you in his attitude and the things he has done for you and with you?
“ Tommy: Yes.
*382 ‘ Court: And, do you feel that Mrs.-has treated you the way a mother would and do you feel that she is like a mother to you?
“ Tommy: Tes, I do Tour Honor.
“ Court: And, do you want to continue that way? Would you like to be one of their family?
“ Tommy: Very much so, Sir.”
Petitioners and the adoptive father in the presence of the court signed and executed an agreement of adoption, which has been made part of the record, wherein petitioners covenant and agree to adopt Tommy and to treat him and regard him in all respects as their own lawful child extending and assuring to him all rights, benefits and privileges incident to such relation and to fulfill all the responsibilities and duties of parents in respect to him. The adoptive father consented to the adoption of Tommy by petitioners, convenanted to agree and acquiesce therein and to refrain from doing or causing to be done any act or anything whatsoever which will in any way interfere with the rights, duties and privileges of Tommy when so adopted.
Tommy has followed the Protestant faith in which he has been brought up. Petitioner husband is of the Jewish faith but testified that he had not practiced his religion since the age of fifteen. He testified that he encouraged Tommy to follow the religious faith in which Tommy believes and approves of Tommy attending with regularity the Episcopal Church to which he goes. Petitioner wife is a Protestant and attends the Episcopal Church with Tommy.
The Rector of the Episcopal Church attended by Tommy and petitioner-wife, under date of December 28, 1955, has sent a communication to the Probation Department of this court which letter has been received in evidence in this proceeding in which he states:
“ I cannot say that I know either Mr. or Mrs.-intimately but I think I know them well enough to have every hope that the Court will grant their petition.
“ They are good, substantial citizens and have lived in this community for a long time. I know nothing of either one which would raise any question of their suitability as adopted parents. Actually, I think the opposite is demonstrated in the development which has taken place in Tommy since he has been in their care.
‘ ‘ Mrs.-and Tommy have attended services here very frequently and regularly. The love and affection they have *383 given him is evident in his whole attitude. He is now a youngster with poise and confidence and a sparkle in his eye. That, I think, tells more than words.”
Speaking of petitioners, the headmaster of the private school attended by Tommy in a communication dated January 4, 1956, to the probation department of this court, which letter is in evidence states:
‘ Both Mr. and Mrs.-are fine people of good educational background. Demonstrating genuine affection and concern for the boy, they have endeavored to give Tommy a strong sense of security and to understand his problems. This they have succeeded in doing and it has been quite remarkable how the boy has blossomed, winning the respect of boys and teacher alike.
‘ To me Mr. and Mrs.-would be a most fortunate and wise choice as foster parents of this boy. Aside from the qualities which I have mentioned, the family is economically able to give this boy every advantage.
“ If you wish further information, please let me know.” Under section 61 of the Domestic Relations Court Act of the City of New York, this court has exclusive original jurisdiction to hear and determine all cases or proceedings involving children who are neglected and ‘ to grant orders for the adoption of such children.”
The adoption proceedings so empowered are conducted in accordance with the provisions of the Domestic Relations Law (art. VII). Section 110 thereof defines adoption as “ the legal proceeding whereby a person takes another person into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect of such other person. A proceeding conducted in pursuance of this article shall constitute a judicial proceeding. An order of adoption or abrogation made therein by a surrogate or by a judge shall have the force and effect of and shall be entitled to all the presumptions attaching to a judgment rendered by a court of general jurisdiction in a common law action.” Under subdivision 2 of section 109 “Judge” is defined as “(b) a judge * * under the domestic relations court act of the city of New York ”. Sections 111 and 112 set forth the requirements with respect to consents necessary to effectuate adoption and the circumstances under which consent is not required, also the requirements for investigation into the facts necessary for determining the propriety of approving the adoption. Section 114 relates to the order of *384 adoption itself, the change of name of the adopted child, the papers pertaining to the permanent court record of the proceedings and sealing of the same from inspection.
I find that pursuant to sections 111 and 112 of the Domestic Relations Law all persons whose consent is required for the adoption of Tommy have appeared before the court. I find further that the consent of the adoptive mother is not required by reason of the fact that a decree of divorce was obtained against her on statutory grounds and said adoptive mother by judgment of this court was found to have neglected said child.
Under section 111 of the Domestic Relations Law, it is provided that: ‘ The consent shall not be required of a parent who has abandoned the child * * * or who has been divorced because of his or her adultery * * * or who has been judicially deprived of the custody of the child on account of cruelty or neglect; except that notice of the proposed adoption shall be given in such manner as the judge or surrogate may direct to a parent who has been divorced because of his or her adultery and, except that in any other case notice to a parent may be required if the judge or surrogate so orders.”
Subdivision 6 of section 112 of the Domestic Relations Law reads as follows: “In all cases where the consents of the persons mentioned in subdivisions two, three and four of section one hundred and eleven of this article are not required or where the foster child is an adult notice of such application shall be served upon such persons as the judge or surrogate may direct. In a proper case the judge or surrogate may, in his discretion, dispense with the requirement that the foster child appear for examination or join in the petition as required by subdivisions one and two of this section.”
The adoptive mother was duly notified of the date of the hearing and subpoenaed to same, but chose to ignore such notice and court subpoena to attend. I construe her default as deliberate and evidence of her intention not to oppose the adoption sought (see Matter of Lanna, 101 N. Y. S. 2d 579).
The word “ abandoned ” as used in section 111 consists of any conduct by a parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. (Matter of Farquharson, 102 N. Y. S. 2d 230.) The judgment of neglect by the adoptive mother as found by this court was predicated upon her neglect and refusal to perform her parental obligations and her failure to show love and care for Tommy. Her misconduct was tantamount to abandonment within the purview of section 111. (See, also, Matter of *385 Davison, 44 N. Y. S. 2d 763, and Matter of Anonymous, 80 N. Y. S. 2d 839.)
Tommy is happy in petitioners’ home. He is loved and has been treated by petitioners with consideration, understanding, generosity and in all respects as though he were their own child. They want him as their child and Tommy wants petitioners for his mother and father.
Through the portals of the Children’s Court many children under sixteen years of age pass each day with manifold' problems classified by statute as acts of delinquency or due to improper guardianship or neglect. Probation, psychiatry, psychology, and other means of treatment are employed in our efforts to accomplish proper adjustment. Barely is the opportunity given to us to give a child parents through the process of legal adoption. It is refreshing to find a Tommy and two wonderful prospective parents for him. It is gratifying to know that the Legislature has empowered this court by statute to avail itself of the opportunity to build a new life for Tommy and petitioners. The court, confident that Tommy’s moral and temporal interests will be best served, is happy to approve and allow petitioners to adopt Tommy for their very own child.
On the record before this court, the petition herein, the duly executed agreement and consents, the probation report, the testimony of petitioners, the adoptive father and Tommy, the school and church data, and all the exhibits marked in evidence, the court hereby grants the application by petitioners for the adoption of Tommy approving the same in all respects and granting leave for Tommy to be known and called by petitioners’ name and to be henceforth treated in all respects as the child of petitioners.
Order of adoption as submitted is signed, and ordered filed with the clerk of this court together with all of the papers in this proceeding which pursuant to section 114 of the Domestic Belations Law are hereby ordered sealed.